# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| COLLY CASCEN, | ) CASE NO. 7:15CV00061 |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| HAROLD W. CLARKE, ET AL., | ) By: Norman K. Moon |
| | ) United States District Judge |
| Defendant(s). | ) |

Colly Cascen, an inmate proceeding *pro se*, filed this action under the Civil Rights Act, 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.* Cascen alleges that prison officials substantially burdened his Rastafarian practice of group worship; deprived him without due process of a protected interest in group worship and vocational programs; and treated him differently than general population inmates with regard to these group activities. For reasons more fully explained in my opinion entered today in a similar case, *Peters v. Clarke*, No. 7:14CV00598, I conclude that defendants' motion for summary judgment must be granted.

## I. BACKGROUND

The relevant facts are undisputed and are outlined in greater detail in the *Peters* opinion, a copy of which will be provided to the parties in this action. Virginia Department of Corrections ("VDOC") grooming policy, Operating Procedure ("OP") 864.1 (docket no. 21-1), establishes uniform personal grooming standards for offenders to facilitate the identification of offenders and to promote safety, security, and sanitation. Specifically, OP 864.1 requires male inmates to keep their hair one inch or shorter in thickness or depth and prohibits certain hair styles. The policy states: "Failure to comply [with OP 864.1 grooming standards] could pose a

security risk, health hazard, or identification difficulties. Offenders who refuse to comply, or who chronically violate offender grooming standards, will be managed as potential risks to facility order and safety." OP 864.1(IV)(G)(4). Noncompliant inmates receive a security classification of Level H and remain in segregation until they comply with the grooming requirements. OP 830.2(IV)(A)(1); OP 864.1(IV)(H).

If a Level H inmate meets certain criteria, he may be moved to the 864.1 Violators Housing Unit ("VHU"), currently located at Wallens Ridge State Prison. *See* OP 864.1(IV)(I). As set forth in local OP 864A(IV)(A), the VDOC maintains the VHU pod in order to manage safely and "distinctively" inmates who are noncompliant with the grooming standards, and to encourage grooming compliance, while also allowing such inmates participation in groups and privileges not otherwise available to them in segregation so as to improve quality of life. It is not a general population pod, but offers more activities and privileges than are available to segregation inmates. VHU residents wear different colored jumpsuits to distinguish them from other Wallens Ridge inmates. VHU inmates cannot be housed with or be near non-VHU residents, with the exception of the school tutor. VHU residents have access to various educational programs, such as Anger Management, Thinking for a Change, and the Department of Correctional Education ("DCE") programming. VHU residents may hold jobs, have two-hour non-contact visits each week, and participate in re-entry services if they qualify. They may practice their religious beliefs in their cells or with other offenders in the pod and may meet with the chaplain. Since January 16, 2015, inmates in the VHU pod may also attend a group religious service on Fridays conducted in the DCE area of the prison.

Cascen is a Virgin Islands prisoner, who has been in the custody of the Virginia Department of Corrections ("VDOC") at Wallens Ridge State Prison since September 2014,

pursuant to a contract between the VDOC and its Virgin Islands counterpart. When he first arrived at Wallens Ridge, officials advised him that to be in general population, he would need to cut his hair, in compliance with OP 864.1. Based on his Rastafarian religious beliefs,[1] Cascen refused to cut his hair, so officials placed him in a segregation unit. On October 17, 2014, officials placed Cascen in the VHU. Thereafter, he filed grievances, complaining that he was being treated differently than general population inmates. Specifically, he sought an opportunity to participate in unspecified vocational programs available to general population inmates and complaining that VHU policy burdened his religious practice in unspecified ways. The responding officers advised Cascen that he had access to educational programming just like other VHU inmates and could practice his religion in his cell.[2] Cascen has participated in the Thinking for a Change program and is on the waiting list to participate in education courses. He is also on the master pass list to participate in the group Rastafarian services now available to VHU inmates.

Cascen filed this § 1983 complaint in December 2014 against numerous supervisory officials at Wallens Ridge.[3] Liberally construed, Cascen's complaint alleges the following claims for relief:

---

[1] Cascen does not offer specific information about his Rastafarian beliefs. Information online indicates: "Rastafari is an Abrahamic new religious movement that accepts Haile Selassie I, the Ethiopian emperor from 1930 to 1974 as God incarnate and the Messiah who will deliver believers to the Promised Land, identified by Rastas as Ethiopia. It has its roots in black-empowerment and back-to-Africa movements." Catherine Beyer, *Rastafari*, http://altreligion.about.com/od/alternativereligionsaz/a/rastafari.htm (last visited August 20, 2015).

[2] Cascen submits an affidavit from another VHU inmate who was allowed to participate in a group religious service in the kitchen area with other, general population Rastafarian inmates on one occasion: June 26, 2014. Thereafter, that inmate was denied access to the group service because of his VHU status. Cascen's submissions, however, do not dispute that generally, by policy and practice, VHU inmates are intended to be kept separate from non-VHU inmates for security reasons.

[3] The defendants are: Harold W. Clarke, David Robinson, John Jabe, J. C. Combs, Rebecca Young, Brenda Ravizee, Quincy Reynolds, and Gregory Holloway.

1. Cascen has a liberty or property interest in being provided access to vocational programs while in prison and a liberty interest in participating in group religious services, and defendants deprived him of these interests without due process;

2. Defendants failed to allow Cascen to participate in group religious services and vocational programs because of his VHU status, while providing such programs to other general population inmates, in violation of the Equal Protection Clause.

3. Defendants denied Cascen the opportunity to participate in separate Rastafarian group services because of his VHU status, in violation of his rights under the First Amendment and RLUIPA.[4]

4. Supervisory officials failed to correct the violations alleged in Claims 1 through 3.

Cascen seeks compensatory damages and declaratory and injunctive relief, directing that he be returned to the Virgin Islands.

Defendants responded to Cascen's complaint with a motion for summary judgment, providing additional and undisputed evidence about OP 864.1 and the VHU. Cascen has responded to their motion, making the matter ripe for disposition.

## II. DISCUSSION

### A. Standard of Review

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may

---

[4] Cascen does not argue that OP 864.1 or other facets of the VHU operating policy violate his rights under the Constitution or RLUIPA.

not make credibility determinations or weigh the evidence." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

B.  No Personal Involvement

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his rights under the Constitution or laws of the United States. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013).  In his complaint, Cascen does not affirmatively state conduct or omissions by each of the defendants, personally that violated his constitutional rights. *See, e.g., Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995).  Similarly, no supervisory official can be held automatically liable for violations possibly committed by his or her subordinate employees; the doctrine of *respondeat superior* does not apply in § 1983 cases. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Thus, Cascen fails to state facts on which he could hold any defendant liable, as a supervisor, for violations committed by subordinates.[5]  On these grounds, defendants are entitled to summary judgment.

C.  No § 1983 Due Process Violation

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.  "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Phiphus*, 435 U.S. 247, 259 (1978).

---

[5] In his declaration and memorandum in response to the summary judgment motion Cascen attempts to explain the defendants' personal involvement in the alleged constitutional violations.  He does not properly move to amend his complaint with this information, however.  Moreover, even if he could show each defendant's actions related to his claims, defendants are, nevertheless, entitled to summary judgment as to the claims themselves.

In this same response, Cascen asserts that Defendant Ravizee "short stopped [his] grievances," which were denied as unfounded.  Merely responding to an inmate's administrative remedies does not implicate any constitutionally protected right. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that prisoners do not have a constitutional right to participate in grievance procedures); *Brown v. Va. Dep't Corr.*, No. 6:07-CV-00033, 2009 WL 87459, at *13. (W.D. Va. Jan. 9, 2009) (citing *Adams,* stating that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation").

5

"To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). More specifically, he must (a) "point to a [state or federal] law or policy providing him with an expectation of avoiding the conditions of his confinement," and (b) "demonstrate that those conditions are harsh and atypical in relation to the ordinary incidents of prison life," *id.* at 252, or "will inevitably affect the duration" of his confinement. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). "[W]hen a state policy expressly and unambiguously disclaims a particular expectation, an inmate cannot allege a liberty interest in that expectation." *Prieto*, 780 F.3d at 252.

Cascen appears to argue that he has a protected liberty or property interest under Virgin Islands law, 5 V.I. Code § 4503(c),[6] in being provided access to vocational programs while in prison,[7] and a protected interest under the First Amendment of the Constitution in participating in group religious services while in prison. I conclude, however, that even if an inmate may have some "expectations" arising under these provisions while assigned to the VDOC general population,[8] any such expectations are trumped by the VDOC grooming policy. OP 864.1

---

[6] Section 4503(c) provides that Virgin Islands prison administrators, before transferring inmates to other states, "shall ascertain and insure the availability of educational *or* vocational programs . . . for the purpose of enabling such inmates . . . to gain marketable skills" (emphasis added).

[7] In relation to his due process claims, Cascen also references the contract by which the Virgin Islands correctional department arranged to confine him in a VDOC prison. A contract claim under state law is not independently actionable under § 1983. Because I herein conclude that defendants are entitled to summary judgment on Cascen's § 1983 claims, I decline to exercise supplemental jurisdiction over any related state law claims and will dismiss them without prejudice. *See* 28 U.S.C. § 1367(c).

[8] The United States Supreme Court has made it clear that changes in prisoners' classifications or confinement conditions that trigger constitutional due process protections will be rare. *See, e.g., Meachum v. Fano*, 427 U.S. 215, 224, 228 (1976) ("[W]e cannot agree that any change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause" by its own force; and whatever "expectation the prisoner may have [under state regulations to certain conditions of confinement are] too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all").

6

expressly provides that *any* inmate who fails to comply with the grooming policy will be housed in segregation until he complies. Cascen admits that he has not complied with the hair length requirements of OP 864.1. Thus, he cannot claim a state-created liberty interest in participating in all programs allowed to inmates in less-restrictive security classifications. *Prieto*, 780 F.3d at 252. Accordingly, his § 1983 due process claims regarding his inability to attend such group programs under his current circumstances fails on the first prong of the due process analysis.[9] Therefore, I will grant defendants' motion for summary judgment as to Cascen's due process claims.

D. No Equal Protection Problem

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Courts have interpreted this clause as commanding that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). To survive summary judgment, Cascen must demonstrate: (1) "that he has been treated differently from others with whom he is similarly situated"; and (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Disparate treatment of similarly situated prisoners "passes muster so long as [it] is 'reasonably related to [any] legitimate penological interests.'" *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

Cascen's equal protection claims fail on the first facet of this analysis. Because Cascen is not in compliance with OP 864.1 and is housed in the VHU pod, he is not similarly situated to

---

[9] For reasons explained in my opinion in *Peters v. Clarke*, No. 7:14CV00598, I also find that Cascen fails to demonstrate that VHU policies against group activity participation have posed any atypical hardship on him. He does not mention any particular vocational program for which he, himself, has applied and been rejected. Moreover, he does not dispute defendants' evidence that he is on the waiting list to participate in educational programs or explain why these programs are insufficient to aid him in gaining marketable abilities.

7

other Virgin Islands inmates, who are in compliance with OP 864.1 and are housed in the general population at Wallens Ridge. Because the two groups are not similarly situated, officials may lawfully treat them differently. Moreover, this policy of segregating higher security risk inmates is rationally related to clearly established state interests in maintaining prison security. For the stated reasons, I will grant defendants' motion for summary judgment as to Cascen's equal protection claims.[10]

### E. No Free Exercise or RLUIPA Claim

Under the Free Exercise Clause of the First Amendment, prison officials must reasonably accommodate an inmate's exercise of his sincerely held religious beliefs. *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). A federal statute now provides more direct protection of prisoners' religious exercise: "RLUIPA prohibits [state] prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that the burden furthers a compelling governmental interest by the least restrictive means." *Miles v. Moore*, 450 F. App'x 318, 319 (4th Cir. 2011) (citing 42 U.S.C. § 2000cc-1(a)). A claim under the First Amendment or RLUIPA requires the inmate to prove a substantial burden on a practice "sincerely based on a religious belief." *Holt v. Hobbs*, __U.S. __, 135 S. Ct. 853, 862 (2015) (RLUIPA); *O'Lone, supra* (First Amendment). "[A] substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)).

---

[10] Cascen moves to amend his complaint to include evidence that VDOC officials settled a similar § 1983 and RLUIPA lawsuit with another inmate by sending him back to the Virgin Islands in exchange for his agreement to drop the lawsuit. This information has no bearing on the validity of Cascen's constitutional claims or defendants' motion for summary judgment. Cascen could have pursued a similar settlement with defendants if he so wished Therefore, I will deny his amendment as futile.

8

Cascen fails to show that the VHU policy against group religious services for VHU inmates with non-VHU inmates has put a substantial burden on any sincere religious belief. Cascen does not point to any particular tenets of the Rastafarian faith about group worship services or indicate that his own religious practice has involved this practice in the past. Nor does Cascen offer any evidence that his desire to meet with other Rastafarians is for religious, rather than social purposes. Most importantly, even if Cascen could prove a religious basis for his wish to meet with other Rastafarians, he does not demonstrate that VHU policy has substantially burdened his ability to exercise that religious practice. He does not indicate that he attempted hold such group meetings in the VHU pod, even though he had the capability to do so.[11] He also offers no evidence that the temporary inability to have a Rastafarian group service outside the VHU pressured him to modify his behavior so as to violate his beliefs. Finally, since January 2015, Cascen has had the ability to hold separate group meetings with other VHU Rastafarians.[12]

For the stated reasons, I conclude that Cascen has failed to show any genuine issue of material fact in dispute on which he could persuade a fact finder that before January 2015, VHU policy substantially burdened his religious exercise so as to violate his rights under the First

---

[11] In his declaration in response to the summary judgment motion, Cascen states that group services in the VHU pod were not possible, because inmates are not allowed to bring religious books and other materials out into the pod, and if they had done so, such items would have been confiscated. He also complains that he had no access to religious services while he was in segregation before entering the VHU. Cascen does not allege that he requested access to Rastafarian group services while in segregation, however, and his grievances about lack of access to group services while in the VHU do not mention any need for Rastafarian believers to bring religious books or other items to group services. Prison officials cannot be held liable under the First Amendment or RLUIPA for failing to accommodate a religious practice of which they were never notified. *See, e.g., Lovelace*, 472 F.3d at 194 (holding that negligent conduct is not sufficient grounds for liability). Moreover, because Cascen did not exhaust administrative remedies about these aspects of his group worship claim before presenting these allegations in his lawsuit, this portion of his claim is barred under 42 U.S.C. § 1997e(a). *See Woodford v. Ngo*, 548 U.S. 81 (2006) (interpreting § 1997e(a) as requiring proper exhaustion of administrative remedies before filing of federal lawsuit).

[12] Defendants argue that since Cascen now has access to a group worship service, his claims for injunctive relief to obtain such meetings are moot, and Cascen offers no genuine issue of material dispute on this point. *See, e.g., Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013) (finding that restoration of plaintiff's visitation privileges rendered moot his request for injunctive relief to order that those privileges be restored).

9

Amendment or RLUIPA. Therefore, I will grant defendants' motion for summary judgment as to these claims.[13]

### III. CONCLUSION

For the reasons stated, I will grant defendants' motion for summary judgment and deny Cascen's motion to amend. An appropriate order will issue this day. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 26th day of August, 2015.

/s/ Norman K. Moon
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[13] Moreover, even if Cascen could show that temporary lack of access to separate group worship services substantially burdened that aspect of his religious practice, he has no claim for monetary damages under RLUIPA. *See Sossamon v. Texas*, 563 U.S. 277,___, 131 S. Ct. 1651, 1658-59 (2011); *Rendleman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009). For different reasons, he also has no claim for monetary damages under the First Amendment. Even before he achieved access to group worship services in the VHU pod, Cascen could practice his beliefs in other ways, by wearing his hair uncut and worshiping in his cell, and VHU policy is reasonably related to prison interests in maintaining security and limiting staffing costs and efforts. *See O'Lone*, 482 U.S. at 350-52 (applying four-factor analysis of *Turner v. Safely*, 482 U.S. 78 (1987)). Moreover, the VDOC's regulations keeping grooming policy violators from other inmates have been upheld against constitutional and RLUIPA challenges, based on the unique security risks presented by inmates' uncut hair and certain hairstyles, including dreadlocks. *See, e.g., McRae v. Johnson*, 261 F. App'x 554 (4th Cir. 2008) (citing *Ragland v. Angelone*, 420 F.Supp.2d 507, 512 (W.D. Va. 2006) (citing other cases), *aff'd*, *Ragland v. Powell*, 193 F. App'x 218 (4th Cir. 2006) (unpublished), *cert. denied*, *Ragland v. Powell*, 127 S. Ct. 1877 (March 26, 2007).